# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JULIO RIVAS-GOMEZ <br><br> Defendant. | Case No. 2:18-cr-566 <br><br> MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS INDICTMENT <br><br><br> Judge Clark Waddoups |

Before the court is Mr. Rivas-Gomez's Motion to Dismiss, (ECF No. 16). For the reasons stated below, the court GRANTS the motion.

## Background

Mr. Rivas-Gomez is a citizen of Mexico. (ECF No. 16-1 at 5.) In June of 1997, he entered the United States without authorization. (*See* ECF No. 16-1 at 1.) On or around June 6, 2002, Mr. Rivas-Gomez received a document titled "Notice to Appear. (*See* ECF No. 16-1 at 5.) This document alleged that Mr. Rivas-Gomez (1) was not citizen or national of the United States; (2) was a native and citizen of Mexico; (3) had entered the United States at an unknown date in June, 1997; (4) without being admitted or paroled after inspection by an Immigration Officer. (ECF No. 16-1 at 5.) The document advised Mr. Rivas-Gomez that he was required to appear before an immigration judge at a "date, time[,] and place to be set." (ECF No. 16-1 at 5.) According to the Government, Mr. Rivas-Gomez was then "detained in ICE custody pending his hearing." (ECF No. 20 at 2.)

On or around June 13, 2002, Mr. Rivas-Gomez received a document titled a "Notice of Hearing in Removal Proceedings." (ECF No. 23-1 at 2.) This document provided that "the above

captioned case has been scheduled for a MASTER hearing before the Immigration Court on Jul[y] 15, 2002 at 8:30 a.m. at " a courtroom in Lancaster, California. (ECF No. 23-1 at 2.)

It appears that on July 15, 2002, an immigration court ordered Mr. Rivas-Gomez removed. (ECF No. 16-1 at 3.) The next day, it appears that he was taken to the San Ysidro port of entry and was deported "afoot." (ECF No. 16-1 at 2.)

On December 19, 2018, the Government filed an Information charging Mr. Rivas-Gomez with a single count of illegal reentry in violation of 8 U.S.C. § 1326. (ECF No. 1.) Mr. Rivas-Gomez represents that this charge is based on the immigration court's 2002 removal order. (*See* ECF No. 16 at 2.) The Government does not dispute this.

On May 27, 2019, Mr. Rivas-Gomez filed a Motion to Dismiss the Indictment, arguing that the single charge of illegal reentry "should be dismissed because the Notice to Appear did not include all of the information necessary to confer jurisdiction on the immigration court." (ECF No. 16 at 2 (citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018); *United States v. Zuniga-Hernandez*, 1:18-cr-53, 2019 WL 2161551 (D. Utah May 17, 2019).)

In *Zuniga-Hernandez*, this court held that "under a plain reading of 8 C.F.R. § 1003.13, 8 C.F.R. § 1003.14, and 8 U.S.C. § 1229(a), a notice to appear that provides the date and time of an alien's removal proceeding is required in order to vest an immigration court with subject matter jurisdiction over that alien." *Zuniga-Hernandez*, 2019 WL 2161551 at *4. The court also held that if an immigration court lacks jurisdiction, any removal order it enters is void. *See id*. at *5. The court further held that if a removal order is void, an alien-defendant is not required to satisfy 8 USC § 1326(d) in order to challenge its validity. *See id*. At the time of this writing, the Tenth Circuit has issued no binding opinion precluding the court's conclusions in *Zuniga-Hernandez*.

Analysis

In response to Mr. Rivas-Gomez's Motion, the Government makes three primary arguments. The court addresses each in turn.

I. 1326(d)

First, the Government argues that "because [Mr. Rivas-Gomez] fails to meet his burden under § 1326(d) his collateral attack of the removal order should be rejected." (ECF No. 20 at 3.) In support of this argument, the Government relies most heavily on an unpublished Tenth Circuit decision, *Garcia-Galvan*. The panel in *Garcia-Galvan* held that an alien-defendant challenging a prior removal order "even if based on subject-matter jurisdiction," "must satisfy § 1326(d)'s conditions" because the "statute does not exempt subject-matter jurisdiction challenges from this requirement . . . ." *United States v. Garcia-Galvan*, No. 18-6198, 2019 WL 2513637, at *3 (10th Cir. June 18, 2019) (citing *United States v. Millan-Torres*, 139 F. App'x 105, 109 (10th Cir. 2005) (another unpublished decision) as "expressing doubt about the notion of a 'broader exception for all collateral attacks based on jurisdictional failings,' noting that 'no federal court has yet adopted that view.'")). As an unpublished decision, *Garcia-Galvan* is not binding on this court. The court does not find its reasoning persuasive and declines to adopt it.

This court has already held that if an "immigration court did not have jurisdiction over [an alien-defendant] the [underlying] Removal Order is void, and [the alien-defendant] is free to challenge that court's order at any point." *United States v. Zuniga-Hernandez*, No. 1:18-CR-53, 2019 WL 2161551, at *5 (D. Utah May 17, 2019). The court sees no reason to depart from its prior holding. It is well established that defects relating to subject matter jurisdiction may be raised at anytime. If the immigration court lacked subject matter jurisdiction to enter the removal order, it was void from the outset. As this court previously held, "8 USC § 1326(d) does not

3

control when the" removal order at issue "was entered by a court that did not have subject matter jurisdiction over the challenger." *Zuniga-Hernandez*, 2019 WL 2161551 at *5. The question for this court is whether the immigration court's order was void.

II. The Government Argues that the Immigration Court had Jurisdiction

Before addressing the Government's arguments, the court finds it helpful to discuss certain principles related to separation of powers and administrative law.

Separation of Powers Principles

First, an "immigration court, despite its name, is an executive branch agency." *Angov v. Lynch*, 788 F.3d 893, 906 (9th Cir. 2015); *see also Maldonado v. United States Dep't of Homeland Sec.*, No. CIV 09-0616 MV/CG, 2010 WL 11623490, at *2 (D.N.M. Mar. 11, 2010) ("Immigration court is a non-judicial body. These courts form part of the Executive Branch of government . . . ."). The executive branch of government, like Congress, is a political branch of the federal government. "The political branches of the federal government . . . possess concurrent authority over immigration matters." *Jean v. Nelson*, 727 F.2d 957, 965 (11th Cir. 1984). "Congress may exercise its implied powers in the immigration field through its legislative powers, while the Executive has two sources of authority in this area: (1) power delegated by Congress through statutes such as the [Immigration and Naturalization Act] and (2) its inherent power, arising out of the Executive's plenary authority over foreign relations." *Id*. At issue here is the power delegated to the Executive by Congress.

Through the passage of the INA, Congress delegated authority to the Attorney General to "establish . . . regulations, delegate . . . authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section." 8 U.S.C. § 1103(g)(2). To be sure, the Attorney General and "other executive officials" "benefit from" Congress's "extremely

broad delegations." *Jean*, 727 F.2d at 966. But "[d]espite these broad grants of authority, executive officials," when exercising power delegated to them by Congress "function as agents of Congress in enforcing the law . . . ." *Id.* at 966 (internal quotation marks omitted) (citations omitted). "If such officers depart from the zone of authority charted in the statute they act illegally and their actions can be corrected in the courts." *Id.*

Administrative Law Principles

"*Chevron* deference is the deference afforded to an agency's interpretation of a statute it is charged with administering . . . ." *Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008). The Supreme Court has previously applied *Chevron* principles to statutory interpretation by the Attorney General and the Board of Immigration Appeals. *See Immigration and Naturalization Service v. Aguirre–Aguirre,* 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

"*Chevron* is rooted in a background presumption of congressional intent: namely, 'that Congress, when it left ambiguity in a statute' administered by an agency, 'understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941 (2013). "[T]he question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." *Id.* at 296 (emphasis in original).

The Government argues that (A) the immigration judge was vested with jurisdiction, (B) the Board of Immigration Appeals' recent precedential opinion resolves the issue before the court and (C) *Pereira's* narrow holding does not address jurisdiction.

5

A.  The Immigration Court Was Never Properly Vested With Jurisdiction

The Government argues that the Attorney General established a regulatory framework that allows for jurisdiction to vest with the immigration court upon that court's receipt of a notice to appear—regardless of whether the notice to appear contains the time and place of the hearing. The Government argues that this framework "is entitled to substantial deference on review under *Chevron* . . . ." (ECF No. 20 at 12.)

Under *Chevron*, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984). "First, applying the ordinary tools of statutory construction, the court must determine 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941 (2013) (citation omitted). "But 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id*. Most relevant here are two statutes—8 U.S.C. § 1229 and 8 U.S.C. § 1229a.

8 U.S.C. § 1229 is titled "Initiation of removal proceedings." It provides that "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . specifying," among other things "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).

8 U.S.C. § 1229a is titled "Removal proceedings." It provides that [a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."

8 U.S.C. § 1229a.

Neither 8 U.S.C. § 1229 nor § 1229a address how jurisdiction vests with the immigration court. Thus, Congress has not "directly spoken to" that "precise question." *Chevron,* 467 U.S. at 842. "When Congress has not directly addressed the precise interpretative question at issue," "the agency is charged with filling the gap left open by the ambiguity." *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 513, 134 S. Ct. 1584, 1603, 188 L. Ed. 2d 775 (2014) (citations omitted) (internal quotations omitted). The Government overstates the breadth of that gap.

The "precise question" left unanswered by any ambiguity in §§ 1229 and 1229a has been answered through the promulgation of 8 C.F.R. §§ 1003.13, 1003.14, and 1239.1. Those regulations provide that jurisdiction vests when a charging document is filed with the immigration court. Section 1239.1 provides that "[e]very removal proceeding conducted under section 240 of the Act (8 U.S.C. 1229a) to determine the deportability or inadmissibility of an alien is commenced by the filing of a **notice to appear** with the immigration court." 8 C.F.R. § 1239.1 (bold added). Section 1003.14 provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a **charging document** is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14 (bold added). "Charging document means the written instrument which **initiates** a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13 (bold added). "For proceedings initiated after April 1, 1997," a charging document "include[s] a **Notice to Appear**, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13 (bold added).

The Government argues that "[t]he regulations do not . . . incorporate the statutory definition of 'Notice to Appear' found in § 1229(a)(1)." (ECF No. 20 at 12.) The Government's

7

position is that the time and place information required by the statute "is *not* required by the regulation and is *not* a prerequisite to the immigration court being properly vested with jurisdiction to conduct the removal proceeding." (ECF No. 20 at 13 (emphases in original).) The Government overlooks that 8 C.F.R. § 1239.1 indirectly references 8 U.S.C. 1229(a). That regulation provides: "Commencement. Every removal proceeding conducted under section 240 of the Act (8 U.S.C. **1229a**) to determine the deportability or inadmissibility of an alien is commenced by the filing of a **notice to appear** with the immigration court." 8 C.F.R. § 1239.1 (bold added). Section 1229a provides the authority under which "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a. Section 1229(a), in turn, provides that "[i]n removal proceedings under section 1229a . . . written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . specifying," among other things, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Section 1229(a) thus makes clear that a "notice to appear" initiates removal proceedings under 1229a. In other words, a "notice to appear" under section 1229(a) is unquestionably tied to removal proceedings under section 1229a. By referencing a "notice to appear" in "removal proceedings" "under" 1229a, the Executive Branch tied the meaning of the term "notice to appear" under the regulations to the controlling statutes. As the Seventh Circuit recently recognized, "[i]f Congress has defined a term, then an implementing regulation cannot re-define that term in a conflicting way." *Ortiz-Santiago*, 924 F.3d at 961.

The Attorney General is entitled to *Chevron* deference with respect to the specific issue left unanswered by Congress. Here, the specific issue left unanswered by the relevant statutes is how jurisdiction vests with the immigration court. The Attorney General answered that specific issue—jurisdiction vests when a charging document is filed with the immigration court. A

8

charging document, as the Government recognizes, "may take different forms." (ECF No. 20 at 12.) Relevant here is only one form of a charging document—the Notice to Appear. The question becomes what constitutes a Notice to Appear. On this point, Congress left no ambiguity—no gap to fill—a Notice to Appear must contain the time and place information. Thus, on this point, the Attorney General is not entitled to *Chevron* deference. Because the Notice to Appear that Mr. Rivas-Gomez received contained no such information, it was not a valid Notice to Appear. Thus, the immigration court was not vested with jurisdiction. The immigration court's removal order was therefore void.

    B. <u>Board of Immigration Appeals</u>

The Government argues that the Board of Immigration Appeals issued a "precedential opinion adopting the view that a Notice to Appear need not include the date and time of the hearing to vest jurisdiction in an immigration court." (ECF No. 20 at 14 (citing *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018).) In *Bermudez-Cota*, the Board of Immigration Appeals held that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) [8 U.S.C. 1229(a)] of the Act, so long as a notice of hearing specifying this information is later sent to the alien." *Bermudez-Cota*, 27 I & N at 447.

On June 24, 2019, the Government filed an addendum "to add a document . . . to the original Exhibit filed with its Response." (ECF No. 23 at 1.) "The document is a Notice of Hearing in Removal Proceedings for" Mr. Rivas-Gomez. (ECF No. 23 at 1.) The Government notes that "[t]he Notice of Hearing shows that Rivas-Gomez was provided notice of his hearing which was set for June 15, 2002. (ECF No. 23 at 2.)

9

The Government appears to invite the court to infer that jurisdiction vested with the immigration court because this Notice of Hearing contained the time and place of Mr. Rivas-Gomez's hearing. But 8 C.F.R. § 1003.13 does not include a "Notice of Hearing in Removal Proceedings" as a "charging document" which vests jurisdiction with an immigration court upon filing. A charging document includes "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13. Further a charging document "means the written instrument which **initiates a proceeding** before an Immigration Judge." ." 8 C.F.R. § 1003.13 (bold added). Based on the Government's own factual summary, Mr. Rivas-Gomez was "detained in ICE custody" on June 6, 2002 "pending his hearing"—approximately one week before he received the Notice of Hearing on June 13, 2002. (ECF No. 20 at 2; ECF No. 20-1 at 2.) Mr. Rivas-Gomez's removal proceedings were therefore "initiated" on June 6, 2002 through his receipt of the (invalid) Notice to Appear. The later "Notice of Hearing" was not a "charging document" under the regulation because it did not "initiate" his removal proceedings.

Under the regulatory framework, jurisdiction vests upon the filing of a charging document. The "Notice of Hearing" that Mr. Rivas-Gomez received is not a "charging document" under the relevant regulation. A "Notice to Appear" is a "charging document" under the regulation. The court must therefore consider whether the "Notice to Appear" that was filed with the immigration court constitutes a valid "Notice to Appear." "[B]ecause the statute . . . unambiguously" requires a Notice to Appear to contain the time and place of an alien's initial removal hearing, the "Board's interpretation," is foreclosed. *C.f. Esquivel-Quintana v. Sessions*,

137 S. Ct. 1562, 1572, 198 L. Ed. 2d 22 (2017). *Chevron* does not apply to the Board's conclusion.[1]

    C.  <u>Government's Argument that *Pereira* Does not Address Jurisdiction</u>

The Government argues that the Supreme Court's decision in *Pereira* to remand the case for further proceedings undercuts "the contention that the deficiency highlighted by the Court is fatal to the immigration court's jurisdiction." (ECF No. 20 at 20.) The issue of the immigration court's jurisdiction was not before the Court in *Pereira*. It is before this court. With the benefit of briefing on this issue, the court has concluded that compliance with 8 U.S.C. 1229a is a prerequisite for the vesting of the immigration court's jurisdiction.

    III.  <u>Government's Claim-Processing Rule Argument</u>

The Government argues, in the alternative, that "this Court should follow the outcome from *Ortiz-Santiago* and hold that "the rule to include a date and time on the NTA is not jurisdictional, but is instead a procedural claim-processing rule." (ECF No. 20 at 20.) In *Ortiz-Santiago*, the Seventh Circuit distinguished between "truly jurisdictional rules" and "claim-processing rules." *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019). The Seventh Circuit relied primarily on the Supreme Court's decision in *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012) in making this distinction. In *Gonzalez*, the Supreme Court explained that "truly jurisdictional rules" govern "a court's adjudicatory

---

[1] Like the Seventh Circuit in *Ortiz-Santiago*, the court is also troubled that the Board "took no note of" the statutory evolution that occurred through the passage of IIRIRA—wherein Congress "appears to have rejected the two-step approach . . ." *Ortiz-Santiago v. Barr*, 924 F.3d 956, 962 (7th Cir. 2019). As the Seventh Circuit stated: "[t]he Board took no note of this statutory evolution," "nor did [the Board] explain how its decision complied with the present statutory language. These omissions are troubling . . . ." *Id*.

11

authority" while "nonjurisdictional 'claim-processing rules'" do not. *Gonzalez*, 565 U.S. at 141. The Supreme Court explained "the following principle: A rule is jurisdictional 'if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Id*. at 141–42. "But if 'Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional.'" *Id*. (citation omitted).

Applying that principle, the Seventh Circuit held that "[t]he requirement that a Notice include, within its four corners, the time, date, and place of the removal proceeding is not 'jurisdictional' in nature " because 8 U.S.C. § 1229(a)(1)(G)(i) "says nothing about the agency's jurisdiction." *Ortiz-Santiago*, 924 F.3d at 958, 963. Rather, according to the Seventh Circuit, "[i]t is instead the agency's version of a claim-processing rule, violations of which can be forfeited if an objection is not raised in a timely manner." *Id*. at 958. Importantly, the Seventh Circuit acknowledged that the "line of authority" upon which it relied to reach this conclusion "arose in the context of the courts rather than agencies" but nevertheless found "the principle a useful one here as well." *Id*. This court has serious reason to doubt whether the "*Gonzalez* principle"—that a rule is only jurisdictional if Congress clearly states that a threshold limitation on a statute's scope shall count as jurisdictional—applies here, to an agency rather than an Article III court.

In *City of Arlington*, the question presented to the Supreme Court was "whether a court must defer under *Chevron* to an agency's interpretation of a statutory ambiguity that concerns the scope of the agency's statutory authority (that is, its jurisdiction)." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296–97, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941 (2013). The Court ultimately answered that question affirmatively. In answering this question, the Supreme Court noted that there are meaningful distinctions between "jurisdictional" and "nonjurisdictional" questions in the judicial context, but not necessarily for agencies. The Supreme Court noted that

"[t]he misconception that there are for *Chevron* purposes, separate 'jurisdictional' questions on which no deference is due derives, perhaps, from a reflexive extension to agencies of the very real division between the jurisdictional and nonjurisdictional that is **applicable to courts**." *City of Arlington*, 569 U.S. at 297 (bold added). The Supreme Court ultimately explained that "[w]here Congress has established a clear line, the agency cannot go beyond it; and where Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow." *Id*. at 307. "But in rigorously applying the latter rule, a court need not pause to puzzle over whether the interpretive question presented is 'jurisdictional.'" *Id*. "If 'the agency's answer is based on a permissible construction of the statute,' that is the end of the matter." *Id*. (quoting *Chevron*, 467 U.S. at 842).

Based on *City of Arlington*, and its skepticism towards the "reflexive extension to agencies of the very real division between . . . jurisdictional and nonjurisdictional that is **applicable to courts**," *City of Arlington*, 569 U.S. at 297 (bold added), this court declines to adopt the Seventh Circuit's reasoning in *Ortiz-Santiago* that a Notice to Appear "is not 'jurisdictional' in nature." *Ortiz-Santiago*, 924 F.3d at 958. The relevant statutes are ambiguous as to when jurisdiction vests with an immigration court. Despite the Seventh Circuit's position to the contrary, the Attorney General's decision to characterize the initiation of immigration proceedings as a question of "jurisdiction" is relevant. The Attorney General was filling in a gap of statutory ambiguity. On that specific issue, the court sees no reason why the Attorney General's answer is not "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. On this specific issue, which relates to the Attorney General's "interpretation of a statutory ambiguity that concerns the scope of [his] authority (that is, its jurisdiction)," *City of*

13

*Arlington*, 569 U.S. at 296–97, this court defers to the Attorney General—jurisdiction vests when a charging document is filed with the immigration court.

But as explained above, Congress left no ambiguity regarding the meaning of a "Notice to Appear." On this point, "Congress has established a clear line," and the Attorney General "cannot go beyond it"—a Notice to Appear must contain the required time and place information.

## Conclusion

Because the Notice to Appear that was filed in this case did not contain the time and place information required under 8 USC § 1229(a), the immigration court was never vested with subject matter jurisdiction over Mr. Rivas-Gomez. The immigration court's Removal Order is therefore void. Mr. Rivas-Gomez may therefore challenge the validity of the immigration court's removal order at any time. Because the Removal Order is void, as a matter of law, the government is incapable of proving a necessary element of the crime charged. The charge must therefore be dismissed. For the reasons stated, the court GRANTS Mr. Rivas-Gomez's Motion to Dismiss, (ECF No. 16).

DATED this 3rd day of July, 2019.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Court Judge